**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY BETH FRANKENFIELD,** | : | Civil No. 4:14-CV-1112 |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MICROBILT CORPORATION,** | : | |
| | : | |
| **Defendant** | : | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

In this action, Mary Beth Frankenfield has sued Microbilt Corporation, seeking damages, costs and attorney's fees for Microbilt's alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"). Specifically, the plaintiff alleges that in 2013, Microbilt violated the FCRA by furnishing her with a requested copy of her credit report without redacting the first five digits of her Social Security number, as she had specifically requested. The defendant has moved to dismiss the claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that regardless of whether Microbilt failed to redact the numbers, the plaintiff's complaint reveals no harm that stemmed from this mistake. Accordingly, the defendant maintains that the plaintiff has no standing under

Article III of the United States Constitution to bring this action, an argument the defendant has supported by relying chiefly on the United States Supreme Court's ruling in *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S. Ct. 1540 (2016), which recently clarified the kind of injury necessary to bring suit where a plaintiff has relied on a statutory violation as a basis for the lawsuit.

For the reasons that follow, the Court finds that the plaintiff has not alleged that she suffered the kind of concrete and particularized harm necessary to confer standing on her to maintain this action. The well-pleaded facts in this complaint describe the most ephemeral of harms. The plaintiff received a document which she requested. The document was accurate, albeit not fully redacted. There are no well-pleaded allegations of an actual, imminent, or predictable illicit disclosure of any confidential information. Although she has alleged technical violations of the FCRA, the fact that she was furnished her own credit report bearing her unredacted Social Security number and lacking certain notice information that caused her actual harm, does not set forth a cognizable injury, and therefore she lacks standing and the case should be dismissed.

## II.    BACKGROUND

In 2013, the plaintiff requested a copy of her credit report from Microbilt. (Am. Compl. ¶ 31.) In her letter request, she asked that Microbilt redact the first five numbers of her Social Security number on the report. (*Id*. ¶ 32.)

Nevertheless, the plaintiff alleges that Microbilt neglected to redact the digits as requested, instead sending her a report that bore her entire Social Security number. (*Id*. ¶¶ 41-42.)  The complaint does not allege that Microbilt shared an unredacted copy of the credit report with any third party, or that she was the victim of identity theft, or that she suffered in any way from the receipt of the unredacted credit report.  The plaintiff also intimates that Microbilt failed to include certain notices that are required under the FCRA when a credit reporting agency furnishes a party with a copy of their credit report, but she does not allege that the missing information injured her other than to aver in conclusory fashion that the alleged practice of failing to include the notices of the plaintiff's rights under the FCRA "exact[s] serious consequences on consumers and interstate commerce."  (*Id*. ¶ 59.)  Nevertheless, the plaintiff seeks recovery of statutory damages, fees and costs for what she tacitly concedes is a claim based on a statutory violation and an informational injury relating to a statutory notice requirement.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of subject matter jurisdiction."  A motion to dismiss under Rule 12(b)(1) thus challenges the power of the court to hear a case or consider a claim.  *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).  When faced with a 12(b)(1) motion, the plaintiff has the burden to "convince the court it has

jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000); *see also Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

Motions under Rule 12(b)(1) come in two varieties. First, a "facial" attack "contests the sufficiency of the pleadings." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 187-88 (3d Cir. 2006)). Such a facial challenge "attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court 'to consider the allegations of the complaint as true.'" *Hartig Drug Company, Inc. v. Senju Pharmaceutical Co., Ltd.*, -- F.3d --, 2016 WL 4651381, *4 (3d Cir. Sept. 7, 2016). Thus, in ruling on such a motion, the court assumes the truth of the allegations in the complaint, but must analyze the pleadings to determine whether they state an action that comes within the court's jurisdiction. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). A facial 12(b)(1) motion should be granted only if it appears certain that the assertion of subject-matter jurisdiction is improper. *Kehr Packages*, 926 F.2d at 1408-09; *Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of Ne. Pa.*, 285 F. Supp. 2d 573, 577 (M.D. Pa. 2003).

In contrast, a "factual" attack on subject-matter jurisdiction asserts that although the pleadings facially satisfy jurisdictional requirements, one or more allegations in the complaint is untrue, which therefore causes the action to fall outside the court's jurisdiction *Carpet Group, Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In ruling on factual challenges, a court must consider the merits of the disputed allegations, since "the trial court's . . . very power to hear the case" is in dispute.  *Mortensen*, 549 F.2d at 891.

In this case, Microbilt has presented the Court with a facial challenge to subject-matter jurisdiction by arguing that even accepting the plaintiff's allegations as true, they are insufficient to demonstrate injury-in-fact, since the plaintiff has not suffered any concrete and particularized injury stemming from the alleged FCRA violations.  The Court thus should accept the allegations in the plaintiff's amended complaint as true, and determine whether those facts as alleged are sufficient to establish subject-matter jurisdiction over the claims.

## IV.  DISCUSSION

After this action was first filed, the Court entered an order staying further proceedings because the United States Supreme Court had granted certiorari in *Spokeo* and a decision in that case was expected to have relevance to the threshold question of whether the kinds of injuries that the plaintiff in this action has alleged

are sufficient to confer Article III standing to sue in federal court.  After *Spokeo* was issued earlier this year, the defendant moved to dismiss the plaintiff's claims, arguing that the plaintiff lacked standing because she has not alleged that she suffered any actual injury by virtue of being provided a copy of her credit report bearing her Social Security number, and the alleged omission of general notice information required by the FCRA.

The issue of standing is one of constitutional significance, and is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "To establish Article III standing, a plaintiff must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'"  *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman v. National Football League*, 810 F.3d 187, 193 (3d Cir. 2016)).  In order to allege an injury-in-fact, "a plaintiff must claim 'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'"  *Id.*  Harm is deemed to be "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.*  An injury is "concrete" if it is " 'de facto'; that is, it must actually exist" rather than being only 'abstract'." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1548).

In *Spokeo*, the plaintiff alleged that Spokeo, an online background check firm, had reported inaccurate information about him to its customers.  The plaintiff brought suit alleging that the misreporting to third parties violated the FCRA, and the Ninth Circuit concluded that he had standing based upon his "personal interests in the handling of his credit information", as well as because of the alleged "violations of his statutory rights created by the [Act]."  *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413 (9th Cir. 2014).  The Supreme Court granted certiorari in *Spokeo* to address the specific question of "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."  *Id.* (quoting Supreme Court, No. 13-1339, Question Presented, http://www.supremecourt.gov/qp/13-01339qp.pdf.)

Ultimately, the Supreme Court did not specifically answer that question, but instead vacated the judgment of the Ninth Circuit Court of Appeals and remanded the case for further proceedings, including to determine whether the plaintiff had standing in light of the instruction and guidance set forth in the Supreme Court's opinion.  The Court found that the Ninth Circuit had erred because it focused exclusively on whether the plaintiff had alleged a "particularized" injury, without also considering whether the injury was "concrete."  *Spokeo*, 136 S. Ct. at 1550

("Because the Ninth Circuit failed to fully appreciate the distinction between concreteness and particularization, its standing was incomplete."). The Supreme Court also made clear, however, that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547-48. The Court went further:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bar procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at 1549 (citation omitted); *see also id.* at 1550 ("A violation of one of the FCRA's procedural requirements may result in no harm."). The Court explained that if a consumer reporting agency failed to provide required notices to a user of the agency's consumer information, like an incorrect zip code, that allegation alone might be insufficient to confer standing on a plaintiff because it is "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* at 1550. Furthermore, the Court emphasized that for an injury to be "concrete" it cannot be wholly abstract or conjectural; the injury must "actually exist." *Id.* at 1548.

The Court also recognized that intangible harms can sometimes be sufficient to create Article III standing, since "concrete" is not necessarily the same as "tangible." *Id.* at 1549.  In considering whether intangible injuries are sufficiently concrete to give rise to standing, the Supreme Court instructed that courts should look to "both the history and the judgment of Congress," *id.*, noting that with respect to history, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*.  The Court recognized that although Congress cannot elevate all intangible harms so that they satisfy the injury-in-fact requirement of Article III standing, in some cases "the violation of a procedural right granted by statute can be sufficient . . . to constitute injury in fact, and that in those cases a plaintiff "need not allege any additional harm beyond the one Congress has identified." *Id.*  Nevertheless, it is clear after *Spokeo* that for a procedural violation to satisfy the injury-in-fact requirement, the procedural violation must constitute a "concrete" harm.  *Id*.

Since *Spokeo*, the Third Circuit Court of Appeals has had occasion to apply its holding in cases where challenges to standing were made.  For example, in the *Nickelodeon Consumer Privacy Litigation* appeal the plaintiffs were a class of children who alleged that an online website improperly tracked their usage and shared the information with other entities in violation of federal law, including the

Video Privacy Protection Act, the Wiretap Act, and the Stored Communications Act. The defendant argued that the children had not suffered any injury, relying on *Spokeo*. The Third Circuit disagreed:

> None of [*Spokeo's*] pronouncements call into question whether the plaintiffs in this case have Article III standing. The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps "intangible," the harm is also concrete in the sense that it involves a clear de facto injury, i.e., **the unlawful disclosure of legally protected information**. Insofar as *Spokeo* directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for a lawsuit," [*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015)] noted that Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (emphasis added). The Third Circuit followed *Spokeo*'s admonition that courts consider also the "history and judgment of Congress" to see if the alleged injury was sufficiently concrete, *Spokeo*, 136 S. Ct. at 1549, and found that this factor supported the conclusion that the alleged injuries suffered – namely, the unlawful disclosure of legally protected information – was sufficiently concrete to confer standing. *Id.*

In a recent decision, Judge Caputo of this Court found that a plaintiff had adequately pleaded facts to establish standing where the plaintiff alleged that the

defendant violated the Fair Debt Collection Practices Act by sending a collection notice that revealed the plaintiff's personal information through the envelope's glassine window. *Daubert v. NRA Group, LLC*, Civ. A. No. 3:15-cv-00718, 2016 U.S. Dist LEXIS 105909, 2016 WL 4245560 (M.D. Pa. Aug. 11, 2016). Judge Caputo relied on *Nickelodeon's* guidance in finding that the claim before the Court – which was grounded in the unlawful disclosure of legally protected information by causing the contents of the mailer to be visible through the envelope itself – was sufficiently particularized and concrete under *Spokeo* to confer standing on the plaintiff. However, in *Daubert* the Court's conclusion regarding standing was based upon a real, concrete, identifiable risk of harm which flowed directly from the defendant's alleged handling of confidential information, the ability of third parties to illicitly access confidential personal information.

Other courts addressing other claims on slightly different facts have come out the other way. For example, in *Jamison v. Bank of Am., N.A.*, No. 2:160422, -- F. Supp. 3d --, 2016 U.S. Dist. LEXIS 88326, 2016 WL, *3-*5 3653456 (E.D. Cal. July 6, 2016), the court concluded that a plaintiff lacked standing to sue for violations of the Truth in Lending Act where mortgage payments sent to the plaintiff himself contained inaccurate information. In *Gubala v. Time Warner Cable, Inc.*, No. 15-1078, 2016 U.S. Dist. LEXIS 79820, 2016 WL 3390415, at *3-*5 (E.D. Wis. June 17, 2016), the district court found that a plaintiff lacked

11

standing to sue under the Cable Communications Privacy Act where the plaintiff alleged speculative harms, including that the defendant failed to destroy the plaintiff's personal information after he had terminated his cable service, since the bare possibility that the plaintiff's information could be disclosed to third parties was too speculative and insufficient to establish a concrete injury.

In *Smith v. Ohio State University*, -- F. Supp. 3d --, 2016 U.S. Dist. LEXIS 74612, 2016 WL 3182675 (S.D. Ohio June 8, 2016), the plaintiffs had applied to work at The Ohio State University, and alleged that the university had violated the FCRA during the hiring process when it asked for consent to pull their credit reports to do background checks.  The plaintiffs alleged that the university violated their rights after providing a disclosure and authorization form to the plaintiffs that included extraneous information such as a liability release.  The plaintiffs eventually were hired by the university, but claimed that they suffered injury in the application process by having their privacy and statutory rights violated.  Relying on *Spokeo* and other cases, the university moved to dismiss for lack of jurisdiction, and the district court agreed:

> In determining whether Congress has elevated FCRA breaches to the status of legally cognizable injuries, the Supreme Court held that [a] violation of one of the FCRA's procedural requirements may result in no harm." In this case, plaintiffs allege they suffered harm when their "privacy was invaded and they were misled as to their rights under the FCRA."  However, plaintiffs admitted that they did not suffer a concrete consequential

12

>   damage as a result of OSU's alleged breach of the FCRA.
>   Without a concrete and particularized injury-in-fact, there
>   is no Article III standing in this Court.

*Id.*, 2016 WL 3182675, at *4 (citations omitted). Other courts have reached similar conclusions, where plaintiffs have attempted to predicate standing upon a bare procedural violation without alleging any actual concrete injury resulting from that violation. *See, e.g., Dolan v. Select Portfolio Servicing*, Civ. A. No. 03-CV-3285, 2016 U.S. Dist. LEXIS 101201, 2016 WL 4099109 (E.D.N.Y. Aug. 2, 2016).

The case at bar is distinguishable from the *Nickelodeon* litigation and the *Daubert* case before Judge Caputo, both of which involved allegations that the defendants had disseminated or unlawfully disclosed legally protected information – conduct that the courts found not only to be procedural and statutory violations, but violations that were alleged to have caused actual concrete injury to the plaintiffs. In this case, by way of contrast, the plaintiff has alleged only that Microbilt violated the terms of the FCRA by furnishing her with a copy of her credit report that did not redact the first five letters of her Social Security number. There is no allegation that this private identifying information was shared with third parties, and no explanation as to how the receipt of a true and correct credit report bearing the plaintiff's own Social Security number could be construed as a concrete injury. The plaintiff instead is relying on the fact of the procedural

violation alone to establish standing, which *Spokeo* has instructed is insufficient in cases just like this.

The plaintiff's claim that Microbilt violated the FCRA by failing to include certain legal notices in the credit report fares no better. The plaintiff, apparently relying on the Supreme Court's decisions in *Federal Election Commission v. Akins*, 524 U.S. 11 (1998) and *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989), seems to be asserting that any time a credit reporting agency fails to include certain information required by statute, an affected plaintiff has sufficient injury to maintain standing to sue. *Akins* and *Public Citizen* "involved statutory rights intended to protect and promote public interests that, by their nature, are intangible and diffuse, and would be rendered wholly unenforceable were intangible injury, or bare procedural violations, categorically insufficient to confer standing." *Dolan*, 2016 WL 4099109, at *4. In this case, by contrast, the information that the plaintiff claims not to have received in her credit report was readily available to her, as the defendant has noted.

But more importantly, the plaintiff has not alleged any harm from the absence of the form notice in the disclosure package Microbilt sent, placing this case on different footing that *Akins* or *Public Citizen*, which concerned injuries to citizens who were unable to obtain information about a political committee and its members and funding under the Federal Election Campaign Act (*Akins*), and

information about judicial nominees under the Federal Advisory Committee Act (*Public Citizen*).  In this case, the notice of information that the plaintiff complained of is hardly the same as the political information sought in *Akins* and *Public Citizen*, and is admittedly available to her.  As such, the Court does not find that the plaintiff has articulated facts showing a particularized and concrete injury, but has instead based her claim exclusively on a procedural violation that after *Spokeo* is not sufficient, on its own, to establish standing.

While the plaintiff has not articulated sufficient facts to give rise to standing, and this complaint should be dismissed, we recognize that *Spokeo* is an intervening legal development which clarifies the nature of the constitutional standing requirement in this setting. Therefore the district court may wish to consider dismissing the complaint without prejudice to one final effort by the plaintiff to articulate further well-pleaded facts giving rise to standing in light of *Spokeo*.

## V. **RECOMMENDATION**

Considering the facts set forth in the amended complaint as true, and guided by the Supreme Court's instruction in *Spokeo* as applied to those facts, the Court concludes that the plaintiff has not pleaded facts to show that she suffered a concrete injury as a result of Microbilt's alleged procedural violations of the FCRA.  Accordingly, IT IS RECOMMENDED that the defendant's motion to dismiss be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                            */s/ Martin C. Carlson*
                                            Martin C. Carlson
                                            United States Magistrate Judge

Dated: October 3, 2016